**Brad SKRAMSTAD and Cindy Skramstad, Plaintiff,**

v.

**PLUM CREEK MERGER CO., INC., Plum Creek Management Co., Inc.; Plum Creek Management Co., L.P.; PC Advisory Partners I, L.P.; Plum Creek Marketing, Inc.; Plum Creek Manufacturing Co. Inc; and Does A–Z, Defendants.**

**No. CV 97–087–GF–DWM.**

United States District Court,
D. Montana,
Great Falls Division.

April 16, 1999.

Tom L. Lewis, J. David Slovak, Lewis, Huppert & Slovak, Great Falls, MT, for plaintiffs.

Todd A. Hammer, Warden, Christiansen, Johnson & Berg, Kalispell, MT, Alice D. Leiner, Ronald L. Berenstain, Perkins Coie, Seattle, WA, Marc A. Boman, Perkins Coie, Seattle, WA, for defendants.

## ORDER

MOLLOY, District Judge.

## I. Background

Brad Skramstad worked at the Plum Creek Evergreen Plywood Plant in Kalispell, Montana. Skramstad was injured on June 19, 1995 when he fell from a piece of machinery in the hot press area of the plant. As a result of the fall, Skramstad suffered permanent injuries including paralysis and partial quadriplegia. Skramstad's immediate employer at the time of the accident was Plum Creek Manufacturing. Manufacturing paid worker's compensation benefits to Skramstad.

The named Plum Creek defendants in this litigation are alleged to be general partners of Plum Creek Manufacturing. Skramstad's amended complaint was filed on March 6, 1998 and alleges the following causes of action: failure to provide a safe work place, premises liability; negligence; and loss of society, comfort, support and consortium.

On August 25, 1997, Plum Creek Management filed its brief in support of its motion to dismiss. Defendant Plum Creek Merger Company also filed a motion to dismiss on August 25, 1997. On September 11, 1997, an order was entered setting oral argument on the motion to dismiss for April 24, 1998 and giving Skramstad until March 27, 1997 to file a response to the motion to dismiss. Prior to that time, motions for a protective order were filed in response to Skramstad's notice of depositions of Plum Creek corporate representatives. On April 15, 1998 an order was entered vacating oral argument set for April 24, 1998. On April 24, 1998 Plum Creek filed an answer to the complaint. A status conference was held on May 21, 1998 that set a schedule for discovery and oral argument on pending motions. The motion to dismiss was converted to a motion for summary judgment. Oral argument was set for September 30, 1998; that argument was continued on motion of the defendant due to a religious holiday conflict.

A companion case, *Cordis v. Plum Creek*, CV–97–149–GF–DWM, naming the same defendants and being tried by the same attorneys, has been stayed pending the resolution of this motion to dismiss.

### 1. Motion to dismiss

When matters outside the pleadings are presented to and not excluded by the court in consideration of a motion to dismiss under 12(b)(6), the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Rule 12(b); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996).

## 2. Summary judgment motion

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment must show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has made this showing, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. Argument and analysis

Plum Creek argues that the exclusivity principle afforded to an immediate employer of an injured worker under Montana law extends to the general and limited partners of the immediate employer. It then argues that Management is the general partner of Manufacturing and is protected from this suit to the same extent that its partners are protected by the exclusive remedy of the workers compensation statute.

Skramstad, on the other hand, argues that the Plum Creek defendants are not Brad Skramstad's employers within the meaning of the Montana workers compensation statute. Management and Manufacturing are completely separate entities for taxation, insurance and other benefits, and therefore are also separate entities for payment of workers compensation benefits. Since they are separate, Skramstad argues Management is a third party and not immune from suit as Skramstad's employer.

The argument can be summarized as follows: Parties other than the immediate employer of an injured worker may be held liable for the injury. The nature of Plum Creek Management's relationship with Plum Creek Manufacturing is such that Management [is] [is not] a third party with respect to Brad Skramstad. If Management is a third party, Skramstad can maintain a common law action against Plum Creek Management. If Management is not a third party, Skramstad's suit must be dismissed.

Both sides concur that if Management is a third party it is not immune from suit while both also agree if management is not a third party, it enjoys the same immunity that Manufacturing enjoys under the workers compensation exclusivity statute. The issue to be decided is whether under Montana Law, Manufacturing and Management are separate entities, even though they are "general partners."

### A. Third party liability in Montana

Plum Creek argues that the language of Article II of Section 16 of the Montana Constitution can only be understood in light of the Montana Supreme Court's holding in *Ashcraft v. The Montana Power Company*, 156 Mont. 368, 480 P.2d 812 (1971). The focus of *Ashcraft* was on independent contractors who are required to carry workers compensation insurance by their general employer. Where an injured employee receives benefits from his immediate employer, who is an independent contractor, then the general employer of the independent contractor enjoys the immunity of the workers compensation exclusivity

provision. The *Ashcraft* reasoning was based on the general contractor's contractual requirement that the subcontractors carry workers' compensation insurance.

*Ashcraft's* significance was altered by Article II, Section 16 of the 1972 Montana Constitution, which states in pertinent part:

No person shall be deprived of full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees *and his immediate employer who hired* him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. (Emphasis added)

Plum Creek argues that the amendment to Article II authorized suits against truly independent third parties but does not affect persons or entities who are part of the employment relationship. The reasoning is based on the analogy derived from *Ashcraft's* holding. Plum Creek concludes that "immediate employer" as contained in Article II cannot trump the exclusivity provision of MCA § 39–71–411. *Ashcraft* and Article II are relevant to determine when a claim may be brought against a true third party. Reading *Ashcraft* and Article II together, so they argue, there is no legal basis for finding here that a general partner is not an employer for purposes of the workers compensation exclusivity provision. This is particularly so when the immediate employer is required to carry workers' compensation insurance.

Skramstad relies on the Montana Supreme Court's more recent decision in *Trankel v. State of Montana,* 282 Mont. 348, 938 P.2d 614 (1997) to argue that "immediate employer" as defined in Article II Section 16 of the Montana Constitution is limited to mean the employer who hired the plaintiff *directly.* Other entities that are associated with the employer, but who did not hire the employee, may not be immune from suit because they do not come within the definition of "immediate" employer.

In *Trankel,* the plaintiff was employed by the United States, but injured while working on property owned by the state of Montana. The Montana Supreme Court found that the plaintiff was not precluded from bringing an action against the state of Montana, since the state was not his immediate employer and therefore did not enjoy immunity under the workers compensation exclusivity provision. The Court did not analyze the plaintiff's relationship to the state of Montana and the relationship of Montana to the United States for a determination of third party status. The holding in *Trankel* is not based on the plaintiff's status viz-a-viz his employer, the United States, and the employer's relationship to the tortfeasor, the state of Montana, in light of the workers compensation doctrine. Although the plaintiff in *Trankel* was an employee of the United States, Article II of Section 16 of the Montana Constitution authorized a suit against the Montana state government for injuries that were incurred incidental to Trankel's military service.

■ The Montana Supreme Court holds that Article II "precludes limitations on claims by injured employees against persons other than the employee's employer or fellow employee." *Trankel,* 938 P.2d at 622. Suits against third parties are actionable.

## B. Immediate employer and third parties

Plum Creek's argument is that Management is not a third party and a holding to the contrary would render Manufacturing's immunity illusory. A partner's obligation to pay a judgment is assumed by the partnership, and a partner or general partner is not a separate and distinct legal entity from the partnership. § 35–12–803(2) MCA. If this premise is right, then according to Plum Creek, the General partners are the same as managers or even ordinary employees and are immune from suit under the same exclusivity of

workers compensation that all of the partners enjoy. If this were so, creative business structuring could broaden the meaning of the immunity statute and render the language of Article II, Section 16 impotent.

The case that most closely touches on whether Management can be considered a third party is *Papp v. Rocky Mountain Oil and Minerals*, 236 Mont. 330, 769 P.2d 1249 (1989). Plum Creek argues that the holding in *Papp*, that the immunity of one joint venturer under the workers compensation exclusivity provision extends to the second joint venturer, is applicable here. By analogy, the immunity of one general partner extends to grant immunity to the second general partner. Skramstad argues that the joint venture in *Papp* distinguishes it from the partnership here, and even if *Papp* is persuasive, it will likely be over-ruled based on the holding in *Trankel*.

In *Papp*, the Montana Supreme Court presumed that two joint venturers are both employers for purposes of workers compensation issues. *Papp*, 236 Mont. 330, 769 P.2d 1249, 1257. The Court in *Papp* had to decide whether the two companies at issue were joint venturers. If they were, the Court reasoned, then they were both employers. If they were not joint venturers, then they were not both employers and the plaintiffs could bring a common law cause of action against the non-joint venturer as a non-employer. The Supreme Court looked at the relationship between the two companies to determine whether or not a joint venture existed. Based on the nature of the relationship, a joint venture was found to exist and therefore both companies were employers for workers compensation exclusivity purposes. *Papp*, 769 P.2d at 1257. Notably, the case does not refer to the "immediate employer who hired him" language of Article II, Section 16.

As in *Trankel*, *Papp*'s holding does not answer the problem presented by Skramstad. The parties agree that Manufacturing and Management are general partners.

Plum Creek argues that if joint venturers are co-employers for workers compensation purposes, then general partners must also be deemed co-employers. ·Plum Creek relies on the holding in *Mercier v. Saber, Inc.*, 888 F.2d 1459 (1st Cir.1989) for support in arguing that a general partner of a limited partnership is immune from suit where the limited partnership has paid workers compensation benefits. The facts in *Mercier* are different than the facts here. Likewise, Article II, Section 16 alters the law that applies here.

*Mercier* contained an intertwining of the relationships between the two general partners in employing the plaintiff. In *Mercier*, one partner hired the plaintiff, while the other paid workers compensation benefits. Here, there is a distinct delineation between the two "partners". Manufacturing was the employer who hired Skramstad *Mercier* provides no persuasive authority for concluding that Management was Skramstad's employer as a matter of law. The other cases cited by Plum Creek are distinguishable because they address the liability of an individual partner where the partnership itself has paid workers compensation benefits.

Where a general partner's role in the worker's employment is limited, the general partner does not establish a reason for concluding that a claim by the worker is barred by the exclusivity principle of workers compensation. Where the general partners are separate entities for all purposes regarding the employee's day to day work environment, the exclusivity theory of workers compensation provides protection only to the immediate employer who hired the workman. It does not extend to all formal business relations of the immediate employer. The language of Article II of Section 16 is restrictive: the words "immediate employer who hired him" means the person or entity for whom he works. The phrase "who hired him" would be meaningless if it is construed to

mean not only his immediate employer but the employer's partners as well.

■ Plum Creek does not contend that Management was Skramstad's employer as a matter of fact. The argument is limited to the legal premise that a general partner is not a third party under workers compensation law. There is no evidence here that Management controlled any of Skramstad's activities while he was employed at Plum Creek. Management played no role in Skramstad's employment. Skramstad did not even know Management existed. There is no reason factually or legally to conclude that the workers compensation exclusivity provision precludes Skramstad's claim against Management.

### 1. Equal Protection claim

Plum Creek argues that if Management is found to be a third party then this court will be treating partnerships more harshly than corporations, joint ventures, or sole proprietorships in the context of compensation for workplace injuries. I do not find the argument persuasive and therefore, reject it.

### 2. Merger's liability

■ Plum Creek's final argument is that the defendant Plum Creek Merger Company should be dismissed because it does not exist and it ceased to exist four years prior to Skramstad's accident. No other information or authority is offered.

Skramstad argues that Merger may be sued as a defendant even though it is defunct. MCA § 35-1-937. I find Skramstad's position is well taken.

### III. Conclusion

Brad Skramstad's immediate employer who hired him was Plum Creek Manufacturing. The general partners of Plum Creek Manufacturing are third party entities with respect to the plaintiff, Brad Skramstad, and are not shielded from suit by the immunity provisions of the workers' compensation statute. Consequently, all third party entities are subject to such liability as the plaintiff may be able to prove.

Plum Creek Management's motion to dismiss, treated as a motion for summary judgment, is denied. [Doc. # 6 and # 71]

Plum Creek's equal protection argument is denied.

Plum Creek Merger's motion to dismiss is denied. [Doc. # 6]

IT IS FURTHER ORDERED parties shall convene at a telephone status conference for the purposes of setting trial dates and discovery deadlines on Friday, May 14, 1999 at 10:00 a.m. The attorneys are directed to contact chambers at 542–2788 at the telephone numbers at which they can be reached by May 12, 1999.

The clerk of court is directed to notify the parties of the making of this order.